## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

CARTER LUMAN, *Individually and on*
*behalf of all Others similarly situated,*

Plaintiff,

                                     Case No:

v.

ELITE INSURANCE PARTNERS LLC
and JAGGER ESCH,

Defendants,
_____.

## COLLECTIVE ACTION COMPLAINT FOR VIOLATIONS OF THE OVERTIME WAGE SECTION OF THE FAIR LABOR STANDARDS ACT (FLSA)

Plaintiff, CARTER LUMAN, individually and on behalf of all other similarly situated persons employed as Inside Sales Agents ("ISA") from the period of three years preceding the filing of this complaint through the date of trial who consent to their inclusion in this collective action herein sue Defendants ELITE INSURANCE PARTNERS LLC (hereinafter referred to as "Elite") and Jagger Esch, pursuant to 29 U.S.C. §216(b), of the Fair Labor Standards Act (the "FLSA") and states as follows:

## RECITATION OF FACTS

1.    Plaintiff Luman and the class of similarly situated current and former ISA all worked at Elite Insurance Partners physical office located in Palm Harbor,

Florida, or worked remotely and their work was directed from Defendant's office located in Palm Harbor, Florida.

2.     The Sales Agent's primary function was to use telecommunications such as telephones, email and technology to solicit individuals to purchase Medicare supplemental insurance packages.

3.     Plaintiff Luman, and the putative class of similarly situated employees were not compensated for all hours worked over 40 in each and every work week and were unlawfully and intentionally misclassified by Defendants as salaried exempt employees through a scheme to avoid and evade their obligations under the FLSA.

4.     Defendants have improperly and willfully withheld and refused to pay Plaintiff and all ISA overtime wages and premiums for overtime hours worked in violation of the nation's federal wage law, the FLSA.  Defendants' records will demonstrably show that Plaintiff, and all ISA were classified as salaried exempt employees in blatant and shocking disregard for the FLSA's overtime wage requirements for employers and corporations such as Defendants.

5.     At minimum, Defendants acted with reckless disregard for its obligations to pay ISA overtime premiums for all hours worked, but worse, willfully stole the hard earned and owed wages of many hundreds of its employees in the

name of profits and minimizing labor costs while reaping the benefits of their free labor.

6.      Defendants know that ISA fail the short test for the executive exemption since they do not supervise or direct the work of two or more full time employees, and their primary job duties are non-exempt sales duties, not management of the business or enterprise nor any department of Defendant.

7.      Defendants knew or should have known that ISA do not meet the administrative exemption, as their primary job duty does not in involve the use of discretion and independent judgment in matters of significance affecting the company and its management; and that their primary job duty is production and sales, typically non-exempt under the FLSA and as concluded by the DOL regulations and the DOL field operations handbook.

8.      Defendant has a comprehensive lead generation system such that agents do not have to solely rely upon their own contacts and sources to generate sales.

9.      Defendant absolutely knows that its ISA routinely worked overtime hours, as managers and supervisors witnessed the extra hours, managers and company officials saw and knew that ISA were accessing telephone systems, CRM databases, emails, and engaged in computer demonstrations outside the standardized mandatory corporate schedule.

10.     The Plaintiffs paychecks also demonstrate some overtime hours were recorded and tracked, just never paid.

11.     Defendant also knew that ISA performed work in the evenings and on weekends and even managers communicated with ISA about work outside the regular business hours, as well as encouraged the extra work.

12.     Defendant has willfully failed to pay Plaintiff, and all similarly situated employees in accordance with the Fair Labor Standards Act (FLSA). Specifically, Plaintiff and similarly situated employees were not paid premium pay (aka overtime wages) for all hours worked in excess of forty (40) hours per week.

13.     Plaintiff Luman and the class of similarly situated employees did not and currently do not perform work that meets the definition of any exemption under the FLSA, and the Defendant's pay practices are not only unfair, but blatantly unlawful under the FLSA.

14.     In this pleading, the term "Inside Sales Agent" (ISA) means any employee of Defendant working under the various titles of: Medicare Sales Agent, Licensed Agent, Insurance Agent, Broker or any other job title of employees who performed substantially the same job of an insurance produce sales employee working at the Palm Harbor Office or working remotely from home and reporting to Defendant's office.

15.     ISA predominantly spend their days making inbound calls leads of persons who have inquired about the insurance products, as well as sending email solicitations, researching the internet and negotiating the sales of Medicare supplement insurance policies or other insurance products.

16.     The allegations in this pleading are made without any admission that, as to any particular allegation, Plaintiff bears the burden of pleading, proof, or persuasion.  Plaintiff reserves all rights to plead in the alternative.

### Jurisdiction & Venue

17.     This Court has subject matter jurisdiction over this action pursuant to *28 U.S.C. § 1331*, because this action involves a federal question pursuant to the Fair Labor Standards Act ("FLSA"), *29 U.S.C. § 216 (b)*.

18.     This Court is empowered to issue a declaratory judgment under 28 U.S.C.§§ 2201 and 2202.

19.     This Court has personal jurisdiction over the Defendant, because the Defendant operates substantial business in Pinellas County, Florida and the damages at issue occurred within this District, where Defendant maintained an office throughout the relevant time period.

20.     Venue is proper to this Court pursuant to 28 U.S.C. Sec. 1391(b) because the Defendant resides in this district and because a substantial part of the events giving rise to the claims occurred in this District as Plaintiff was hired from,

supervised from and his work was directed by officers and managers from Defendant's fixed office location located at 34125 Us Highway 19 North – STE 200, Palm Harbor, FL 34684.

21.    The overtime wage provisions set forth in FLSA § 207 apply to Defendant, as Elite engaged in interstate commerce under the definition of the FLSA.   Indeed, at all relevant times, Defendant engaged in interstate commerce and/or in the production of goods for commerce within the meaning of FLSA Sec. 203 as a common business enterprise.   Additionally, Defendant earned more than $500,000 in revenue during the years 2019 to 2021 as well.

## The Parties

### Representative Plaintiff, Carter Luman

22.    Carter Luman resides in Florida.   He was first hired to work for Defendant EIP as a salaried, exempt employee under the title of Sales Agent (aka Medicare Sales Agent, (herein Inside Sales Agent "ISA") in May 2019, working in the corporate, Palm Harbor, Florida office.

23.    Plaintiff's work was highly supervised, micro-managed, and scrutinized on a daily basis by management.

24.    Plaintiff, like all other ISA, was required to meet certain metrics which gauged his performance and determined whether he would continue to have a job.

25.     Plaintiff also had sales quotas and it was expected that his warm leads would lead to Medicare supplemental sales revenues resulting in bonus payments of $50.00 per policy sold.

26.     Luman was a licensed sales agent, employee of Defendants, and who last worked for Defendants on or about April 25, 2022.

27.     Plaintiff was expected to be in the office working at minimum, the corporate set schedule of Monday to Friday, 8:00 am to 5:00 pm., and did not have the discretion to come and go as he pleased, walk in late or leave early or work less than 40 hours during the week without being preapproved or would suffer disciplinary action.

28.     Plaintiff worked routinely after the ending time of his shift of 5:00 pm, as well as working prior to the official start time of 8:00 am.

29.     Plaintiff routinely worked upwards of 10 hours per day and more than 40 hours routinely throughout the term of his employment, and without ever being paid a premium for his overtime hours, meaning any hours of 40 in the workweek.

### *The Defendants*

30.     ELITE INSURANCE PARTNERS LLC (EIP) is a for profit Delaware company with world headquarters located at 34125 US HWY 19N, UNIT 200 PALM HARBOR, FL 34684.   Defendant may be served through its designated

registered agent: Hughes Consulting Services LLC, 522 Alt 19 Palm Harbor, FL 34683.

31.     Upon information and belief, Elite employs approximately 20 or more employees working at or reporting to the Palm Harbor office.

32.     Defendant EIP is an employer within the definition of the FLSA, as it has revenues exceeding $500,000 annually in all applicable time periods, is involved in interstate commerce, and employs upwards of 250 or more employees across the U.S.

33.     Given turnover, Plaintiff estimates that the putative class of similarly situated agents to be in the range of 350 persons who worked as ISA within the preceding 3 years from the filing of this complaint.

34.     EIP was Plaintiff's employer within the meaning of 29 U.S.C. § 203(d).

35.     Defendant, JAGGER ESCH, is the CEO, Founder and upon information and belief, directly or indirectly is the primary owner and majority LLC member of Defendant EIP.

36.     Defendant ESCH, as the CEO has operational and day to day control over the business of EIP and as such is an employer of Plaintiff and all those similarly situated as defined under section 203d of the FLSA.

37.     Defendant ESCH is also the person who created, instituted and maintained the unlawful pay practices complaint of, and who alternately directs the work of Plaintiff and all other ISA.

**General Collective Action Allegations**

38.     This collective action arises from a longstanding and ongoing, unlawful scheme by Defendants to willfully underpay and refuse to pay overtime wages to a large class of workers, the ISA, who Defendants knew, and knows still up through the filing of this complaint, routinely worked overtime hours without being paid for all hours worked.

39.     Defendants' unlawful pay practice applicable to all ISA consisted of willfully misclassifying them as exempt employees and then encouraging them to work overtime hours without being paid a premium for all overtime hours worked.

40.     Management at a minimum clearly and without dispute "turned a blind eye" to the overtime hours worked by the ISA, and specifically encouraged Plaintiff and all other ISA to work as many overtime hours as necessary to hit the quotas, sales goals, and metrics in order to maximize incentive compensation and to keep their jobs.

41.     Elite ran this overtime wage scheme for pure greed and to save many millions of dollars in labor costs and by decreasing labor costs, all to the detriment

of its ISA who slaved away working long hours without being paid for their hard work and which Defendants benefits from.

42.     Defendants no doubt made a calculated, willful decision to refuse to pay overtime wages under the risk that even if someone or many eventually made a claim for overtime wages, they would have benefited financially from the additional sweat and work of extra unpaid hours of its ISA in terms of increased sales, and the fact that the statute of limitations would run on claims before many would even assert their rights under the FLSA.

43.     As is often stated by Courts in similar FLSA overtime wage cases over the last 70 years, this is the classic case willful misclassification and a SCHEME of an employer to avoid it overtime pay obligations under the FLSA.

44.     Here, Luman and all other similarly situated ISA were not being paid a fair wage for a fair day's work as the FLSA mandates and for which it was created.

45.     The FLSA does not require employees to "claim" or submit a claim for overtime hours as a condition for being paid for these hours, especially where the Defendants knew, or should have known, that employees are working overtime hours.

46.     Here, Defendants have maintained for many years the application of these unlawful pay practices and engaged in a planned campaign of disinformation

or intentionally keeping silent about the FLSA overtime pay requirements for its inside sales employees.

47.    Defendants, throughout the preceding 3 years of the filing of this Complaint and currently as well, have been well aware of their ISA, including Plaintiff, routinely working overtime hours without being paid for all hours worked.

48.    Upon information and belief, all ISA working from or reporting to Defendants' corporate office were paid on similar compensation plans of a base pay and some incentive pay bonus plan paid on a monthly basis, and all were treated as exempt from overtime pay.

49.    Plaintiff's primary job duties are well recognized as typical non-exempt work duties under the FLSA and by DOL regulations and rulings.

50.    When hired, Luman, like all other ISA, was led to believe the position was an exempt salaried position, and that if he had to work overtime hours to hit quotas, the time would not be compensated, and he would not be entitled to overtime premiums.

51.    Plaintiff, like his fellow ISA, assumed his employer was complying with the FLSA and federal or state wage laws, and did not seek to challenge their classification as exempt from overtime.

52.    The Clearwater office maintained an office schedule for all ISA from Monday to Friday, 8:00 am until 5:00 pm, 9-hour workdays and a 45 hour workweek,

with a "presumption" that each ISA would take a full 1-hour, uninterrupted and non-working bona fide = meal or lunch break.

53.     The ISA are believed to have tracked and recorded some of their work hours on a program or system they logged in and out of.

54.     The company policy was to strongly encourage ISR to work overtime hours, including on weekends, which Plaintiff routinely did.

55.     More importantly though, it was made clear to Luman and to other ISR that he worked with that in order to maximize the bonus money incentive cash they could earn and meet sales or production goals or quotas, and be a successful ISR, more than 40 hours per week of work was required, Defendants expected and required it.

56.     It is also well known to EIP that only those sales representatives who were working more than 40 hours, and as well not taking full, 1 hour uninterrupted meal breaks were the ISA who reached the sales goals, the maximum bonus money, and who were the most productive sales employees.

57.     Thus, Luman and the other ISA were left with the dilemma and between a rock and a hard place:  either work overtime hours without pay and without complaining or filing claims, or fall short of sales goals, earn very small bonuses and risk being fired for lack of production and lack of sales.

58.     Throughout Plaintiff's term of employment, Luman routinely came in early, stayed late and worked most of the days without a 1-hour uninterrupted meal break and more than 8 hours of compensable work time each day.

59.     Further, if an ISA employee takes a full 1hr meal break, they would be threatened with termination of employment by Defendants.

60.     He also routinely worked on weekends for many hours and was granted unfettered access to email, Salesforce, and the leads.

61.     Plaintiff earned bonuses which for him and all other ISA, while a smaller component of his compensation, was an important component of his overall needed income.

62.     Defendants intentionally and willfully led Plaintiff and all other ISA to believe that classifying them as exempt from overtime pay was a lawful pay practice, yet never disclosed or explained the justification or what if any exemption they were relying upon, especially since under the FLSA, inside sales employees are generally, routinely and widely accepted to be non-exempt employees.

63.     Luman and other ISA were encouraged by Defendants to work as many overtime hours as they could or wanted in order to meet sales goals, and thus keep their jobs for want of production.

64.     Plaintiff found it necessary to stay after the ending shift time and start work earlier than the official start times, as well as working on weekends and put in

these additional overtime work hours to complete his job duties in attempts to obtain sales.

65.     Moreover, management knew of and encouraged ISA to perform work outside the office or outside of business hours, to come in early and start working and to stay as late as they needed.

66.     Plaintiff, and all other similarly situated employees are currently now or have previously been covered under FLSA §207 as employees.

67.     Plaintiff routinely worked more than 40 hours in his workweeks, with the knowledge, encouragement, and behest of Defendants, but was never paid a premium for all such overtime hours worked.

**THE PUTATIVE CLASS**

68.     Plaintiff brings this suit individually, and on behalf of all similarly situated persons composed of the following Class or collective similarly situated members:

**PROPOSED PUTATIVE CLASS**

**All person employed by Elite Insurance Partners LLC as an Inside Sales Agent (ISA), Medicare Sales Agent, Licensed Agent, broker or any other job title used to describe persons whose primary job duty was sales and selling insurance products, anytime within the three years preceding the filing of this lawsuit through to the date of trial.**

69.     At the time of this filing, numerous other members of the putative class seek to join this action and demonstrate that there are others similarly situated who seek to join and claim their overtime wages.

70.     Plaintiff is able to protect and represent the Collective or putative Class or classes, and is willing and able, and consents to doing so.

71.     Plaintiff is a proper Class representative of all those similarly situated as he was employed by Defendant under the titles Sales Agent during his employment, and because:  a) he solicited to sell Elite's insurance products;  b) he was paid under the same common pay structure/plan applicable to all other agents: a base salary with incentive bonus plan; c) was  treated as an exempt employee under the FLSA; d) routinely worked overtime without being paid a premium for the hours worked; and e) is familiar with Defendants policies, procedures and unlawful pay practices.

72.     Upon information and belief, Defendants employed 40 to 50 ISA at any given time working the Palm Harbor, Florida office, not including those who worked remotely of from other offices.

73.     Upon information and belief, during the preceding 3 years all ISA were misclassified as exempt employees and not paid premiums for all overtime hours worked.

74.   Defendant's employee manual is noticeably silent about the FLSA, and overtime pay and policies, intended to confuse ISA and discourage them from challenging their treatment of ISA as exempt employees.

75.   All ISA within this class described herein are now, and at all times within the preceding 3 years of the filing of this complaint were treated as exempt employees and who were assigned to work 9-hour workdays, Monday to Friday, and thus 45-hour work weeks.

76.   At no time during the relevant 3-year time period did Defendant formally discipline agents, including Luman, for working off the clock, or overtime hours.

## *COUNT I*

### *FLSA VIOLATIONS OF FLSA §207 AND DECLARATORY ACTION PURSUANT TO 28 U.S.C. SECTIONS 2201 and 2202*

77.   Plaintiff alleges and incorporates by reference all preceding paragraphs of this Complaint as if set forth herein.

78.   Defendants have willfully and intentionally engaged in a common company practice of violating the provisions of the FLSA, by failing to compensate all ISA as required pursuant to the FLSA's overtime wage provision, Section 207.

79.   Plaintiff and the proposed class of similarly situated, comprised of all current and former persons who worked for Defendants as ISA, were unlawfully and

16

willfully denied overtime compensation and premiums for all hours worked over 450 in each and every workweek, pursuant to FLSA §207.

80.    Plaintiff and all those similarly situated are and were employees of Defendants during their time as contemplated by 29 U.S.C. § 203.

81.    Defendants does not and cannot have a good faith basis for failing to pay Plaintiff and the class of ISA overtime pay, particularly here where the law is well settled that inside sales employees under the FLSA and DOL regulations and rulings are non-exempt employees and entitled to be paid premiums for overtime hours worked.

82.    Even assuming Defendants claims the application of the 207(i), Retail Sales Exemption, such an exemption cannot apply to all ISA on every pay period and every month unless the ISA's commissions for the month exceeded 50% of the total wages.

83.    Lumen never earned more than 50% of his monthly income in bonuses, even if the bonuses could be classified as commissions, which Defendant did not treat the incentive cash as.

84.    Defendants also knew ISA, including Luman were working overtime hours; they encouraged it, and, with blatant disregard for the FLSA, willfully chose not to pay them premium pay for their overtime hours in order maximize profits and for ESCH, personally and finally increase his income and net worth.

85.     Further, Defendants had to be aware and clearly knew Plaintiff and the ISA position was a non-exempt position, subject to the time tracking requirements of the FLSA, and automatically required to pay any non-exempt employee overtime premiums when they knew or should have known such employees worked any time over 40 hours in a work week.

86.     Plaintiff, and the class of similarly situated, are thus entitled to an equal sum in overtime wages owed as liquidated damages. See *Johnson v. Big Lots Stores, Inc.*, 604 F.Supp.2d 903 at 925 (E.D. La. 2009).

87.     Defendants knowingly and willfully failed to accurately and fully track the hours worked by Plaintiff and the class of similarly situated employees in violation of the FLSA and 29 CFR Part 576.

88.     Defendants encouraged sales agents to work as many hours as they could to meet or exceed sales goals as long as they did not report more than 40 hours without prior approval, but meanwhile had direct or constructive knowledge of agents working overtime hours and more hours than reported on their time sheets.

89.     Defendants have failed to make, keep, and preserve accurate time records with respect to each of its employees sufficient to determine their wages, hours, and other conditions of employment in violation of the FLSA 29 USC 201 *et seq.*, including 29 USC Sec. 211(c) and 215 (a).

90.    Defendant was well aware that in order to meet quotas and goals, agents would have to routinely work overtime hours, and that the inside sales rep position was simply not a 40 hour per week job.

91.    To summarize, Defendants have willfully and lacking in good faith, violated the FLSA by failing to pay overtime premiums to Luman and all other similarly situated ISA.

92.    As a result of Defendants' willful violations of the FLSA, Plaintiff and the proposed putative class of similarly situated have suffered economic damages by their willful failure to pay overtime compensation in accordance with FLSA §207 and their created and maintained unlawful pay practices.

93.    Due to Defendants willful violations of the FLSA, a three-year statute of limitations applies to the FLSA violations pursuant to *29 U.S.C. §255(a)*.

94.    As a result of Defendants' unlawful acts and pay practices complained of herein, Plaintiff and all other similarly situated present and former employees working as sales agents under various job titles, have been deprived of overtime compensation in amounts to be determined at trial; and are entitled to recovery of such amounts, liquidated damages in amount equal to the overtime wages due, prejudgment interest, attorneys' fees, costs and other compensation pursuant to *29 U.S.C. §216(b)*, as well as injunctive relief pursuant to *29 U.S.C. §217*.

**WHEREFORE**, Plaintiff, individually, and on behalf of all other similarly situated past and present inside sales agents who worked for Defendants in the 3 years preceding the filing of this complaint to the present, seek the following relief:

a. Designation of this action as a collective action.

b. That Plaintiff be authorized to give notice of this collective action, or that this Court issue such notice at the earliest possible time; to all past and present agents employed by Elite at any time during the three (3) year period immediately preceding the filing of this suit, through and including the date of this Court's issuance of the Court Supervised Notice for each respective class;

c. Designate the Named Plaintiff as Representatives of the Collective or Class for purposes of engaging in mediation, with the authority to execute any Collective Class settlement agreement the parties might reach, which is subject to Court's approval before making any such agreement binding.

d. That all past and present agents be informed of the nature of this collective action, and similarly situated employee's right to join this lawsuit if they believe that they were or are misclassified as an exempt employee;

e. That the Court find and declare Defendants in violation of the overtime compensation provisions of the FLSA;

f. That the Court find and declare Defendants' violations of the FLSA were and are willful;

g. That the Court enjoin Defendants, Pursuant to *29 U.S.C. § 217*, from withholding future payment of overtime compensation owed to members of the Collective or Class;

h. That the Court award to Plaintiff and the Plaintiff Class, comprised of all similarly situated employees, overtime compensation at a rate of one and one half time their regular rates of pay, including the value of all compensation earned, for previous hours worked in excess of forty (40)

for any given week during the past three years AND liquidated damages of an equal amount of the overtime compensation, in addition to penalties and interest on said award pursuant to FLSA §216 and all other related economic losses;

i.    That the Court award Plaintiff and all other persons who opt into this action, recovery of their reasonable attorneys' fees and costs and expenses of litigation pursuant to FLSA § 216, including expert fees;

j.    That the Court award Plaintiff a Class Representative service fee award for the justice he sought out for so many and their services in this case as representatives for the putative class and to their counsel;

k.    That the Court issue in order of judgment under 29 U.S.C 216-17, 28 U.S.C. 2201 and 2202 finding that the Defendants unlawfully and willfully violated the FLSA by failing to pay overtime wages and failing to properly and willfully failing to accurately record all hours worked of non-exempt employees, as well as issue an INJUNCTION barring the Defendants from further violating the FLSA;

l.    That the Court Award Pre-judgment and post-judgment interest, as provided by law, and;

m.    That the Court award any other legal and equitable relief as this Court may deem appropriate, including the value of underpaid matching funds in company pension or 401k plans.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this Complaint.

Dated: June 17, 2022.

_/s/Mitchell Feldman, Esq._
Feldman Legal Group

FL Bar#: 0080349
6916 W. Linebaugh Ave #101
Tampa, Fl 33625
Tele: (813) 639-9366
Fax: (813) 639-9376
mfeldman@flandgatrialattorneys.com
*Attorney for Plaintiff, and the class of
similarly situated*